UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ACKLIN GINGLES,

    Plaintiff,

v.

Case No. 22-cv-11530
Hon. Matthew F. Leitman

UNITED STATES DEPARTMENT
OF HOUSING AND URBAN
DEVELOPMENT, et al.,

    Defendants.

_____/

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DISSOLVE TEMPORARY RESTRAINING ORDER (ECF No. 3) AND DENYING GLORIA SMITH'S MOTION TO INTERVENE (ECF No. 11) AS MOOT

The United States Department of Housing and Urban Development ("HUD") holds a reverse mortgage on real property that Plaintiff Acklin Gingles ("Gingles") owns in the City of Detroit. The balance secured by the reverse mortgage became due and payable in 2016 and remains unpaid today. Since Gingles has failed to pay the balance due, HUD referred the reverse mortgage for a nonjudicial foreclosure. Gingles then filed this action in state court seeking to enjoin HUD's agent from proceeding with an auction sale and foreclosing on his property. (*See* Compl., ECF No. 1, PageID.9-11.) A state court entered a temporary restraining order granting that relief (the "TRO"). HUD then removed the action to this Court, and it has now moved to dismiss the action

1

and to dissolve the TRO. (*See* HUD Mot., ECF No. 3.) For the reasons explained below, HUD's motion is **GRANTED**.[1]

## I

In 2004, Gingles' mother obtained a reverse mortgage on a parcel of real property located at 1510 Bewick Street in Detroit, Michigan (the "Bewick Reverse Mortgage"). (*See* Decl. of Mark Seltzer, HUD Mortgage Housing Specialist, at ¶ 7, ECF No. 1-1, PageID.44.) A reverse mortgage, also known as a Home Equity Conversion Mortgage ("HECM"), is a special type of mortgage insured by HUD. (*See id.* at ¶ 5, PageID.43.) Unlike a traditional mortgage, "the borrower [in a reverse mortgage] is not required to make monthly or other periodic payments to repay the loan." *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016). "Instead, the loan balance increases over time and does not become due and payable until one of a number of specified events occurs," such as the borrower's death or a sale of the home. *Id.* Reverse mortgages are authorized by the HECM program, which exists to meet "the special needs of elderly homeowners by reducing the effect of the economic hardship caused by the increasing costs of meeting health, housing, and subsistence needs at a time of reduced income." 12 U.S.C. § 1715z-20(a)(1).

---

[1] On October 7, 2022, a woman named Gloria Smith moved to intervene in this case. (*See* Smith Mot., ECF No. 11.) Because the Court concludes that it lacks subject matter jurisdiction in the case, Smith's motion is **DENIED AS MOOT**.

The Bewick Reverse Mortgage was assigned to HUD, and since the time of that assignment, it has been serviced by Novad, HUD's loan-servicer. (*See* Seltzer Decl. at ¶¶ 6-8, ECF No. 1-1, PageID.44.) When Gingles' mother passed away in April 2016, Novad notified Gingles that the Bewick Reverse Mortgage was due and payable. (*See id.* at ¶ 9, PageID.44.) In an attempt to avoid a foreclosure of the Bewick Reverse Mortgage, Gingles negotiated a short sale of the property to Sherwin Prior. (*See* Prior Affidavit at ¶¶ 1-2, ECF No. 10-9, PageID.169.) According to Gingles, Novad agreed (on behalf of HUD) to accept the proceeds of the short sale "in full satisfaction of the debt." (*See* HUD email, ECF No. 10-4, PageID.147.) However, the sale fell through and was never completed. (*See* Prior Affidavit at ¶¶ 3-5, ECF No. 10-9, PageID.169.) When it became clear that the short sale would not be completed, Novad referred the Bewick Reverse Mortgage for nonjudicial foreclosure proceedings and scheduled a foreclosure sale for June 14, 2022. (*See* Seltzer Decl. at ¶ 12, ECF No. 1-1, PageID.44.)

On May 4, 2022 – before the scheduled foreclosure sale – Gingles filed this action against Novad in the Wayne County Circuit Court. (*See* Compl., ECF No. 1, PageID.9.) Gingles asserted two claims in his Complaint. In Count I (labeled "Breach of Contract"), he alleged that Novad breached its agreement to allow the short sale of the property to occur. (*See id.* at ¶ 19, PageID.10.) In Count II (labeled "Reformation/Specific Performance"), he sought an order compelling Novad to specifically perform its agreement to permit the short sale to occur. (*See id.* at ¶ 25, PageID.11.)

3

Gingles also filed an *ex parte* motion for a TRO. (*See* St. Ct. TRO Mot., ECF No. 1, PageID.23.)  In that motion, he asked the state court to enjoin the scheduled foreclosure sale. (*See id.*, PageID.24.)  On May 24, 2022, the Wayne County Circuit Court issued the TRO and enjoined Novad and its "officers, agents, servants, employees and attorneys and all persons in active concert or participation with them who received notice of the order by personal service or otherwise" from foreclosing on the Bewick Reverse Mortgage. (*See* TRO, ECF No. 1, PageID.41-42.)

On July 7, 2022, HUD removed this action to this Court under 28 U.S.C. § 1442(a)(1). (*See* Notice of Removal, ECF No. 1.)  That statute authorizes any "agency" of the United States that has been sued to remove an action from state to federal court.[2] 28 U.S.C. § 1442(a)(1); *City of Cookeville, Tenn. v. Upper Cumberland Elec.*, 484 F.3d 380, 389 (6th Cir. 2007).  HUD said that removal was proper under that statute because Novad was acting as HUD's agent, HUD is the real party in interest in this suit, and the relief that Gingles seeks "would restrain HUD and interfere with its administration of the HECM program." (Notice of Removal at ¶ 15, ECF No. 1, PageID.6.)  In support of removal, HUD cited a number of cases in which federal courts have held that, even if a federal agency is not a named party in a state court action, it may remove the action

---

[2] "Congress' purpose [in allowing federal agencies to remove actions from state to federal court under 28 U.S.C. 1442(a)(1)] was clearly to provide a federal forum" for the adjudication of "sovereign immunity" defenses raised by those agencies. *City of Jacksonville v. Dep't of Navy*, 348 F.3d 1307, 1310–11 (11th Cir. 2003).

4

under 28 U.S.C. § 1442(a)(1) if one of the defendants in the state court action was sued based upon acts and omissions it took as an agent of the federal agency. (*See id.*, citing *Clio Convalescent Center v. Michigan Department of Consumer & Industry Services*, 66 F. Supp. 2d 875, 877 (E.D. Mich. 1999) and *Miami Herald Media Co. v. Florida Department of Transportation*, 345 F. Supp. 3d 1349, 1363 (N.D. Fl. 2018).)[3] Following removal, the Court granted a motion by HUD to formally intervene as a party. (*See* Dkt. Order Dated Oct. 12, 2022.)

On July 22, 2022, HUD filed a motion to dismiss this action and to dissolve the TRO entered by the state court. (*See* HUD Mot., ECF No. 3.)  HUD seeks dismissal on two grounds.  First, HUD contends that the Court should dismiss the action for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because it (HUD) enjoys sovereign immunity from Gingles' claims. (*See id.*)  Second, HUD argues that the Court should dismiss the action under Federal Rule of Civil Procedure

---

[3] *See also L. Off. of Mark Kotlarsky Pension Plan v. Hillman*, 2015 WL 5021399 (D. Md. Aug. 21, 2015) (holding that Centers for Medicare and Medicaid Services, a component agency of the United States Department of Health and Human Services, properly removed an action under 28 U.S.C. §1442(a)(1) where the action was filed against one of its contractors); *Tillman v. Town St. Med. Ctr.*, 2010 WL 3586961 (S.D. Ohio Sept. 13, 2010) (noting that the United States Secretary of Health and Human Resources had removed the action to federal court under 28 U.S.C. §1442(a)(1) where the action had been filed against the Secretary's contractor).

5

12(b)(6) because Gingles has failed to state a claim on which relief can be granted. (*See id.*) As explained below, the Court concludes that HUD is entitled to dismissal under Rule 12(b)(1), and thus the Court does not reach HUD's arguments under Rule 12(b)(6).

## II

### A

Rule 12(b)(1) governs challenges based on a lack of subject-matter jurisdiction. *See Loren v. Blue Cross & Blue Shield of Michigan*, 505 F.3d 598, 607 (6th Cir. 2007). Rule 12(b)(1) motions fall into two general categories: facial attacks and factual attacks. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). A facial attack "is a challenge to the sufficiency of the pleading itself." *Id*. The court accepts the complaint's allegations as true and determines whether they establish federal jurisdiction. *Id*. In contrast, when a motion raises a factual attack, "no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (internal citation omitted). HUD does not specify whether it is bringing a facial or a factual attack on the Court's subject matter jurisdiction. But since the Court has considered, at least to some extent, facts presented in an affidavit submitted by HUD, the Court will treat HUD's motion as a factual attack.[4]

---

[4] The result here would be no different if the Court treated HUD's motion as a facial attack. HUD does not appear to dispute the truthfulness of those allegations in Gingles' Complaint that relate to whether the Court has subject matter jurisdiction.

6

**B**

"The doctrine of sovereign immunity removes subject matter jurisdiction in lawsuits against the United States unless the government has consented to suit." *Beamon v. Brown*, 125 F.3d 965, 967 (6th Cir. 1997). "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996). In addition, courts must construe any waiver of sovereign immunity narrowly and resolve any ambiguities in favor of immunity. *See United States v. Williams*, 514 U.S. 527, 531 (1995).

**III**

In its motion to dismiss, HUD argues that this Court lacks subject-matter jurisdiction because this action "is effectively a suit against HUD" and "Congress has not waived HUD's sovereign immunity from suit in this case." (HUD Mot., ECF No. 3, PageID.85-86.) In response, Gingles does not dispute that HUD is the real party in interest in this case. Instead, he argues that Congress has waived HUD's sovereign immunity against claims like the ones he asserts here. (*See* Gingles Resp., ECF No. 10, PageID.112.) In particular, Gingles identifies three statutory provisions that, he says, waive HUD's sovereign immunity: Section 702 of the Administrative Procedures Act (the "APA"), 5 U.S.C. § 702; Section 704 of the APA, 5 U.S.C. § 704; and Section 1702 of the National Housing Act (the "NHA"), 12 U.S.C. § 1702. (*See id.*, PageID.112-113.) HUD counters that none of these three statutes waives its sovereign

7

immunity against Gingles' contract-based claims for equitable relief. (*See* HUD Reply, ECF No. 12, PageID.175.) The Court agrees with HUD.

### A

Gingles first argues that Section 702 of the APA waives HUD's sovereign immunity from his claims. (*See* Gingles Resp., ECF No. 10, PageID.112-113.) That section of the APA provides that, "a person suffering legal wrong because of agency action … is entitled to judicial review thereof." 5 U.S.C. § 702. But this waiver of sovereign immunity does not allow a district court to grant relief against the United States where "any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id.* And that is the case here.

The Tucker Act, 28 U.S.C. § 1491(a)(1),[5] grants the United States' consent to be sued for breaches of contract – like those alleged by Gingles – but that Act "impliedly forbids" district courts from granting the type of injunctive relief that Gingles seeks here. *See, e.g.*, *Normandy Apartments, Ltd. v. U.S. Dept. of Housing and Urban Development*, 554 F.3d 1290, 1296 (10th Cir. 2009) (concluding that the Tucker Act impliedly forbids "federal courts from ordering declaratory or injunctive relief, at least in the form of specific performance, for contract claims against the government, and that the APA does not waive sovereign immunity for such claims"); *Cartwright Intern.*

---

[5] In relevant part, the Tucker Act provides a limited waiver of sovereign immunity for actions against the United States that seek "liquidated or unliquidated damages in cases not sounding in tort" based "upon any express or implied contract." 28 U.S.C. § 1491(a)(1).

*Van Lines, Inc. v. Doan*, 525 F.Supp.2d 187, 194 (D.D.C. 2007) (quoting *Spectrum Leasing Corp. v. U.S.*, 764 F.2d 891, 892-93 (D.C. Cir. 1985)) ("Congress restricted Section 702's waiver of sovereign immunity by stating that nothing in the APA confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought … The Tucker Act operates as such a limitation of section 702 in cases based on contracts with the federal government."); *Parkview Apartments v. United States Department of Housing and Urban Development*, 2005 WL 8185310, at *3 (E.D. Mich. Jan. 24, 2005) (concluding that "the Tucker Act impliedly forbids equitable relief"). Thus, the waiver of sovereign immunity in Section 702 of the APA does not authorize the Court to enjoin HUD from proceeding with the foreclosure of the Bewick Reverse Mortgage.

**B**

Gingles next argues that Section 704 of the APA waives HUD's sovereign immunity from his claims. (*See* Resp., ECF No. 10, PageID.112-113.) That statute provides, in relevant part, that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704. Section 704 does not authorize this Court to hear Gingles' claims because Gingles has neither identified another statute that makes his claims "reviewable" nor shown that HUD's efforts to foreclose on his property

constitute a "final agency action."[6] Thus, Congress did not waive sovereign immunity for cases like this one in Section 704 of the APA.

## C

Finally, Gingles argues that section 1702 of the NHA, 12 U.S.C. § 1702 waives HUD's sovereign immunity from his claims. (*See* Gingles Resp., ECF No. 10, PageID.113.) It does not. That statute "waive[s] sovereign immunity for claims brought against HUD for violating substantive provisions of the Housing Acts." *Selden Apartments v. U.S. Department of Housing and Urban Development*, 785 F.2d 152, 156 (6th Cir. 1986). But, as HUD points out, Gingles has not alleged that HUD violated any substantive provisions of the Housing Acts in this action. (*See* HUD Reply, ECF No. 12, PageID.176.) Thus, Section 1702 of the NHA does not waive HUD's sovereign immunity from Gingles' claims.

## IV

For all of the reasons explained above, the Court concludes that HUD enjoys sovereign immunity from Gingles' claims and that HUD has not waived that immunity. Thus, the Court lacks subject-matter jurisdiction. HUD's motion to dismiss (ECF No. 3) is therefore **GRANTED**, and this action is **DISMISSED**. The dismissal of this

---

[6] As HUD persuasively argues in its reply, none of the alleged conduct attributable to HUD in this case appears to fit the definition of "agency action" contained in the APA. (HUD Reply, ECF No. 12, PageID.176.) Under the APA, the term "agency action" "includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

action necessarily means that the TRO previously granted by the state court in this action is no longer in effect. Accordingly, there is no order now in place that prevents HUD from proceeding with a foreclosure of the Bewick Reverse Mortgage.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: November 15, 2022

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 15, 2022, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126